IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ATAIN INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| V2 PROPERTIES, LLC, ET AL. | : | NO. 22-288 |

## MEMORANDUM

**Padova, J.**                                                           **November 2, 2022**

In this declaratory judgment action, Plaintiff Atain Insurance Company ("Atain") seeks a declaration that it owes no duty to defend and indemnify its insureds, V2 Properties, LLC, V2 Properties Entities 1-8, LLCs, and 2019 E Huntingdon Street, LLC (collectively, "V2"), in connection with a personal injury judgment entered against V2 in the Philadelphia County Court of Common Pleas. Atain has filed a Motion for Judgment on the Pleadings, arguing that its policy with V2 provides no coverage for the losses sustained. For the reasons that follow, we deny Atain's Motion.

## I.      BACKGROUND

The Complaint and its attachments allege that in April of 2020, Lauren Hawk commenced a personal injury action in the Philadelphia County Court of Common Pleas against V2 and others (the "Underlying Action"), seeking to recover damages after her husband (the "Decedent") died from an April 12, 2019 fall from scaffolding while performing masonry work at a home construction site in Philadelphia. (Compl. ¶¶ 24, 27, 30-31, 35, and Ex. 6.[1]) According to Hawk's

---

[1] Atain alleges in its Complaint that Exhibit 6 to the Complaint is the Second Amended Complaint that was filed in the Underlying Action, but Exhibit 6 appears instead to be the original Complaint that Hawk filed in that action, which has no attachments, and neither party has provided us with a copy of the Second Amended Complaint. Accordingly, to the extent that Atain cites to and relies on documents purportedly attached to the Second Amended Complaint in the Underlying Action, we do not consider them.

state court complaint, V2 was a general contractor at the site and, as such, had a responsibility to control the construction project (the "Project") and to ensure the safety of all work performed on the Project.   (Id. ¶¶ 32, 34 & Ex. 6 ¶¶ 14-15.)   Hawk alleged in her state court complaint that Decedent was a "business invitee" and "construction worker" on the Project, who was lawfully performing work on scaffolding, measuring pieces of siding for the Project.  (Id. ¶ 37 & Ex. 6 ¶¶ 17, 32, 45-46.)   She further alleged in her complaint that V2 was negligent and reckless in causing Decedent's catastrophic head injury and death.   (Id. ¶ 29 & Ex. 6 ¶¶ 38-40.)

V2 had a commercial general liability insurance policy with Atain that covered the period of March 21, 2018 through March 21, 2019 (the "Policy").  (Id. ¶ 2 & Ex. 1.)  The Policy period was subsequently extended through April 21, 2019.  (V2's Answer ¶ 2.)  After Hawk served V2 with a letter requesting that V2 preserve evidence relating to Decedent's accident, V2 submitted that letter to Atain as a claim, seeking coverage under the Policy.  (Compl. ¶¶ 20-21.)  Atain issued coverage disclaimers on May 5, 2020 and June 25, 2020.   (Compl. Exs. 2 & 3)

Atain explained in its May and June of 2020 letters that it was declining insurance coverage pursuant to, inter alia, the Policy's Employer's Liability Exclusion, which excludes coverage for injuries suffered by workers on V2's job sites.  (Compl. ¶¶ 47, 51.)  Specifically, the Policy's Employer's Liability Exclusion provides that the insurance does not apply to bodily injury to an employee, subcontractor, employee of any subcontractor, independent contractor, employee of any independent contractor, or any person performing work or services for any insured.  (Id. ¶ 50.)  Given Hawks' allegation that Decedent was a business invitee and a construction worker performing masonry work as part of the Project, Atain asserted that Decedent fell under "one or more of the several types of workers identified in the Employer's Liability Exclusion."  (Compl. Ex. 2 at 4.)

On January 21, 2022, Atain commenced the instant declaratory judgment action, seeking a declaration that it had no duty to defend or indemnify V2 in connection with the Underlying Action.  In particular, Count I of the Complaint specifically seeks a declaration that Atain has no duty to defend or indemnify in light of the Employer's Liability Exclusion.  V2 filed an Answer to the Complaint, in which it asserted as its fourth Affirmative Defense that "[t]he policy at issue does not reflect the reasonable expectations of the insureds and the policy should be reformed to meet those reasonable expectations."  (Answer at 10.)  After Atain filed the now-pending Motion for Judgment on the Pleadings, V2 filed its own Motion to Dismiss or Stay these proceedings, arguing that we should abstain from deciding the coverage issue raised in this action while V2 pursued a state court action against both Atain and V2's insurance broker, but we denied that Motion.  Accordingly, Atain's Motion is now ripe for disposition.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings will be granted . . . if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law."  Fed Cetera, LLC v. Nat'l Credit Servs., Inc., 938 F.3d 466, 469 n.7 (3d Cir. 2019) (alteration in original) (quoting DiCarlo v. St. Mary Hosp., 530 F.3d 255, 262 (3d Cir. 2008)) (citing Fed. R. Civ. P. 12(c)).

"A motion for judgment on the pleadings under Rule 12(c) 'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'"  Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) (quoting Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 134 (3d Cir. 2010)); see also Jenkins v. SEPTA, 801 F. App'x 71, 72 (3d Cir. 2020) ("The standards governing Rule 12(c) motions are the same ones that govern motions to dismiss

under Rule 12(b)(6)." (citing <u>Spruill v. Gillis</u>, 372 F.3d 218, 223 n.2 (3d Cir. 2004))). Therefore, we "must 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party,'" and we may only grant a motion for judgment on the pleadings if "'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" <u>Wolfington</u>, 935 F.3d at 195 (quoting <u>In re Asbestos Prods. Liab. Litig. (No. VI)</u>, 822 F.3d 125, 133 n.6 (3d Cir. 2016)). "Thus, in deciding a motion for judgment on the pleadings, a court may only consider 'the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" <u>Id.</u> (quoting <u>Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010)).

## III.   DISCUSSION

Atain argues that we should enter judgment in its favor on its claim that it has no duty to defend or indemnify V2 pursuant to the Employer's Liability Exclusion.   V2 opposes the Motion, arguing that the Employer's Liability Exclusion is ambiguous, that the reasonable expectations doctrine prohibits the exclusion's enforcement, and/or that we should first permit it to develop a record to support the affirmative defense it has pled for reformation of the Policy based on its reasonable expectations.

### A.   Ambiguity

Under Pennsylvania law, which the parties agree applies here, "'[t]he task of interpreting [an insurance] contract is generally performed by a court rather than by a jury.'" <u>Madison Constr. Co. v. Harleysville Mut. Ins. Co.</u>, 735 A.2d 100, 106 (Pa. 1999) (second alteration in original) (quoting <u>Gene & Harvey Builders v. Pa. Mfrs. Ass'n</u>, 517 A.2d 910, 913 (Pa. 1986)).   In interpreting a policy, the court's primary consideration is "to ascertain the intent of the parties as

manifested by the language of the written instrument." Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983) (citation omitted). The "insurance policy must be read as a whole and construed according to the plain meaning of its terms." C.H. Heist Caribe Corp. v. Am. Home Assurance Co., 640 F.2d 479, 481 (3d Cir. 1981). While "[c]ourts interpret coverage clauses broadly 'to afford the greatest possible protection to the insured,'" and "interpret exceptions to an insurer's general liability narrowly against the insurer," Verticalnet, Inc. v. U.S. Specialty Ins. Co., 492 F. Supp. 2d 452, 456 (E.D. Pa. 2007) (quoting Westport Ins. Corp. v. Bayer, 284 F.3d 489, 498 n.7 (3d Cir. 2002)), they must ordinarily also enforce the plain language of the policy if its terms are clear and unambiguous. Standard Venetian Blind, 469 A.2d at 566 (citation omitted).

"'Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement.'" Madison Constr. Co., 735 A.2d at 106 (quoting Gene & Harvey Builders, 517 A.2d at 913). "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" Id. (quoting Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986)); see also United States v. Pantelidis, 335 F.3d 226, 235 (3d Cir. 2003) ("A contract is ambiguous 'where the contract is susceptible of more than one meaning,' or 'if it is subject to reasonable alternative interpretations.'" (first quoting Sumitomo Mach. Corp. of Am. v. AlliedSignal, Inc., 81 F.3d 328, 332 (3d Cir. 1996); then quoting Taylor v. Cont'l Grp. Change in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir. 1991))). A court should not, "however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." Madison Constr. Co., 735 A.2d at 106 (citing Steuart v. McChesney, 444 A.2d 659, 663 (Pa. 1982)). Rather, policy provisions should be read "to avoid ambiguities if possible and [a

court] should not torture the language to create them."  Spezialetti v. Pac. Emps. Ins. Co., 759 F.2d 1139, 1142 (3d Cir. 1985).

The burden is ordinarily on the insured to establish coverage under a policy.  Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206 (3d Cir. 2001) (citing Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1366-67 (1987).  However, an insurer "bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage."  State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (citing Koppers Co. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1446 (3d Cir. 1996)).

The Employer's Liability Exclusion in the Policy reads in pertinent part as follows:

This insurance does not apply to:

\*   \*   \*

e.   Employer's Liability

1.   "Bodily injury" to an "employee", subcontractor, employee of any subcontractor, "independent contractor", employee of any "independent contractor", "temporary worker", "leased worker", "volunteer worker" of any insured or any person performing work or services for any insured arising out of and in the course of employment by or service to any insured for which any insured may be held liable as an employer or in any other capacity;

2.   Any obligation of any insured to indemnify or contribute with another because of damages arising out of "bodily injury" to an "employee", subcontractor, employee of any subcontractor, "independent contractor", employee or any "independent contractor", "temporary worker", "leased worker", "volunteer worker" of any insured or any person performing work or services for any insured arising out of and in the course of employment by or service to any insured for which any insured may be held liable as an employer or in any other capacity;

\*   \*   \*

For the purposes of this endorsement, "independent contractor" means one that contracts to do work or perform a service for another and that retains control over the means or methods used in doing the work or performing the service.

"Independent contractor" includes, but is not limited to, subcontractors and any employees of a subcontractor, any employee of an independent contractor, any "employees" of any insured, agents, representatives, volunteers, spouses, family members of any insured or any Additional Insureds added to this policy.

\*    \*    \*

This exclusion applies to all causes of action arising out of "bodily injury" to any "employee", subcontractor, employee of any subcontractor, "independent contractor", employee of any "independent contractor", "temporary worker," "leased worker", "volunteer worker" or any person performing work or services for any insured because of "bodily injury" including care and loss of services.

(Policy, Compl. Ex. 1 at 54 of 115; <u>see also</u> <u>id.</u> at 91 of 115.)

V2 argues that the exclusion is ambiguous because it is unclear if "it is limited in its application to only those injuries sustained by direct employees of [V2]" or "vitiates all insurance coverage for the insured's most common and foreseeable liability risk—liability for injuries to any workers on the construction job site." (V2's Mem. at 10-11.) V2 asserts that its interpretation of the Policy as limiting its coverage only with respect to personal injury suits by its own employees for work related injuries, for which it has worker's compensation immunity, is "more compatible with common law notions of legal liability in this context." (<u>Id.</u> at 11.) V2 therefore asks us to construe the Employer's Liability Exclusion "so that it only applies to bodily injuries sustained by direct employees of the insured." (<u>Id.</u> at 12.)

However, in making these arguments, V2 does not point to any actual textual ambiguity in the Employer's Liability Exclusion that could affect its coverage here. <u>See</u> <u>Madison Constr. Co.</u> 735 A.2d at 106 (stating that the ambiguity question is not "to be resolved in a vacuum" but "[r]ather contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts" (citations omitted)). Indeed, as applied here, there is nothing ambiguous in the language of the exclusion, which provides that there is no coverage for bodily injury to an "'employee', subcontractor, employee of any subcontractor,

'independent contractor', employee of any 'independent contractor', . . . or any person performing work or services for any insured arising out of and in the course of employment by or service to any insured for which any insured may be held liable as an employer or in any other capacity." (Policy at 54 of 115.)    While V2 apparently argues that the language does not comport with its reasonable expectations regarding coverage, "generally, courts cannot invoke the reasonable expectation doctrine to create an ambiguity where the policy itself is unambiguous." Matcon Diamond v. Penn Nat'l Ins. Co., 815 A.2d 1109, 1114 (Pa. Super. Ct. 2003) (citations omitted). Accordingly, we have no basis on which to conclude that the Employer's Liability Exclusion is ambiguous as applied to V2's claim.

Having found no ambiguity, we can only conclude that, under the plain language of the exclusion, there is no coverage for Decedent's injuries.  As alleged in the Complaint, Decedent was a "business invitee" and "construction worker" on the Project.  (Compl. ¶ 37.)  Accordingly, by its terms, the exclusion for bodily injury to "any person performing work or services for any insured" applies to exclude coverage for his injuries,[2] and we specifically reject V2's argument that it does not bar coverage here because it is ambiguous.

---

[2] Atain also argues that the Employer's Liability Exclusion unambiguously applies because Decedent was an employee of a company called O'Neill Masonry ("O'Neill"), and O'Neill was one of V2's subcontractors.  However, to establish the factual predicates for this argument, Atain points to documents that we will not consider on a Motion for Judgment on the Pleadings, including its subcontract with O'Neill and a partially redacted Occupational Safety and Health Administration ("OSHA") inspection report that it obtained pursuant to a Freedom of Information Act request.  See Wolfington, 935 F.3d at 195 (permitting consideration of "the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." (quoting Mayer, 605 F.3d at 230)); see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1197 (3d Cir. 1993) (holding that "a document is not a public record for purposes of a motion to dismiss solely because it might be subject to disclosure under FOIA").  Accordingly, we do not consider this alternative argument for application of the Employer's Liability Exclusion.

B.      **Reasonable Expectations**

In spite of the plain, unambiguous language of the Policy, V2 argues—and has asserted as an affirmative defense—that the Policy should be reformed to reflect its reasonable expectation that it would be covered for bodily injuries to workers at its jobsites who are not its direct employees.  Atain has not sought to strike this affirmative defense, but instead argues on the merits that V2's reasonable expectations cannot alter the plain language of the Policy or preclude entry of judgment in Atain's favor.

 "Pennsylvania courts recognize that the doctrine of reasonable expectations applies in insurance transactions." A.P. Pino & Assocs., Inc. v. Utica Mut. Ins. Co., Civ. A. No. 11-3962, 2012 WL 2567093, at *5 (E.D. Pa. July 3, 2012).  "The doctrine provides that 'courts should look to the reasonable expectations of the insured when considering the extent of coverage.'" Id. (quoting Smith v. Cont'l Cas. Co., 347 F. App'x 812, 814 n.1 (3d Cir. 2009)).

"Although 'in most cases, the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations,' the courts must nevertheless 'examine the "totality of the insurance transaction involved to ascertain the reasonable expectations of the insured."'" Humans & Res. LLC v. Firstline Nat'l Ins. Co., 512 F. Supp. 3d 588, 603 (E.D. Pa. 2021) (quoting Liberty Mut. Ins. Co. v. Treesdale, Inc., 418 F.3d 330, 344 (3d Cir. 2005)) (citing Bensalem Twp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1309 (3d Cir. 1994)).  "As a result, even the most clearly written exclusion will not bind the insured where the insurer or its agent has created in the insured a reasonable expectation of coverage." Id. (quoting Treesdale, 418 F.3d at 344, and Reliance Ins. Co. v. Moessner, 121 F.3d 895, 903 (3d Cir. 1997)).  Indeed, there is support for a conclusion that "[t]his principle applies even when the expectations are in direct conflict with the unambiguous terms of the policy and regardless of Plaintiff's status

as a sophisticated purchaser of insurance." Id. (citing UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 503 (3d Cir. 2004)); see also Moessner, 121 F.3d at 906 (predicting that "the Pennsylvania courts will apply the reasonable expectations doctrine, regardless of whether the insured is sophisticated, if the insurer unilaterally inserts the contested provision in the insurance policy despite the insured's request for coverage").  On the other hand, it is commonly understood that "[t]he reasonable expectations doctrine . . . is to be 'applied in very limited circumstances.'" A.P. Pino, 2012 WL 2567093, at *5 (quoting Madison Constr. Co., 735 A.2d at 109 n.8), and "[i]t 'generally applies only to unsophisticated non-commercial insureds, and only to protect such insureds from "policy terms not readily apparent and from insurer deception."'"  Id. (quoting Smith, 347 F. App'x at 814 n.1.)

        In this case, Atain argues that we should enter judgment in its favor in spite of V2's reasonable expectations defense because an insured's reasonable expectations cannot override the policy limitations that are clear and unambiguous and, in addition, because the doctrine does not apply to commercial insureds.  However, as set forth above, its assertion that commercial insureds can never prevail on a reasonable expectations argument is incorrect, as is its argument that clear and unambiguous policy limitations can never be overridden by an insured's reasonable expectations.  See UPMC Health Sys., 391 F.3d at 503 ("[W]e have predicted that Pennsylvania courts would apply [the reasonable expectations] doctrine even where the insured is a sophisticated purchaser of insurance" (citing Moessner, 121 F.3d at 904 n.8)); Treesdale, 418 F.3d at 344 ("Absent sufficient justification, . . . 'an insured may not complain that his or her reasonable expectations were frustrated by policy limitations that are clear and unambiguous.'" (emphasis added) (quoting Frain v. Keystone Ins. Co., 640 A.2d 1352, 1354 (Pa. 1994))).

        Atain also argues that other facts in this case do not support application of the reasonable

expectations doctrine, because V2 has not suggested that Atain engaged in any deceptive conduct and because Pennsylvania courts discourage application of the doctrine where a commercial insured was represented by an insurance broker.  However, these arguments are unpersuasive on a Motion for Judgment on the Pleadings, where we are limited to consideration of the facts alleged in the complaint, its exhibits, matters of public record, and any undisputedly authentic documents on which Atain's declaratory judgment claims are based.  See Wolfington, 935 F.3d at 195 (citation omitted).  While it does appear that V2 was represented by a broker because V2 stated as much in its Motion to Dismiss or Stay this action, this fact is not established by the limited documents that we may consider in connection with Atain's Motion.  Moreover, Atain's argument that V2 has not alleged sufficient facts to support its affirmative defense is unpersuasive when "an affirmative defense need not be plausible to survive; it must merely provide fair notice of the issue involved." Tyco Fire Prods. LP v. Victaulic Co., 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011) (citation omitted).  This is because "[p]roviding knowledge that the issue exists, not precisely how the issue is implicated under the facts of a given case, is the purpose of requiring averments of affirmative defenses."  Id. at 901 (citation omitted).  Thus, contrary to Atain's apparent understanding, "the heightened Twombly/Iqbal standard is not applicable to the pleading of affirmative defenses under Rule 8(c)." [3]  Newborn Bros. Co. v. Albion Eng'g Co., 299 F.R.D. 90, 97 (D.N.J. 2014) (stating that Rule 8(c) requires only that the "party responding to a pleading must 'affirmatively state any . . . affirmative defense'" (quoting Fed. R. Civ. P. 8(c)) (additional citations omitted)).

     Under all of these circumstances, and in light of our obligations to draw all inference in

---

[3] We further note that if Atain believed that it had a basis to strike V2's reasonable expectations defense, it was required to file a motion within 21 days of being served with V2's Answer, which it did not do.  See Fed. R. Civ. P. 12(f) (permitting a party to move to strike from a pleading an insufficient defense or any immaterial matter within 21 days of being served with the pleading).

favor of V2, see Wolfington, 935 F.3d at 195, and to "examine the 'totality of the insurance transaction involved to ascertain the reasonable expectations of the insured,'" Humans & Res., 512 F. Supp. 3d at 603 (quoting Treesdale, 418 F.3d at 344), we will not summarily reject V2's reasonable expectations defense on the limited record before us.  Rather, we conclude that the question of whether the reasonable expectations doctrine applies in this case should be resolved on a full factual record.

## IV.     CONCLUSION

For all of the above reasons, we deny Atain's Motion for Judgment on the Pleadings.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.